1  Lewis E. Hudnell, III (CASBN 218736)
   Hudnell Law Group P.C.
2  800 W. El Camino Real Suite 180
   Mountain View, California 94040
3  T: 650.564.7720
   F: 347.772.3034
4  lewis@hudnelllaw.com

5  Jonathan T. Suder (*Pro Hac Vice To Be Filed*)
   Corby R. Vowell (*Pro Hac Vice To Be Filed*)
6  Dave R. Gunter (*Pro Hac Vice To Be Filed*)
   FRIEDMAN, SUDER & COOKE
7  604 East 4th Street, Suite 200
   Fort Worth, TX  76102
8  T: 817-334-0400
   F:  817-334-0401
9  jts@fsclaw.com
   vowell@fsclaw.com
10 gunter@fsclaw.com

11 ATTORNEYS FOR PLAINTIFF
   OPTICURRENT, LLC
12
                  **UNITED STATES DISTRICT COURT**
13
                  **NORTHERN DISTRICT OF CALIFORNIA,**
14
                  **SAN FRANCISCO DIVISION**
15

| OPTICURRENT, LLC | CASE NO. 3:19-cv-3563 |
|---|---|
| Plaintiff, | |
| vs. | **PLAINTIFF'S ORIGINAL COMPLAINT** |
| POWER INTEGRATIONS, INC., | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff OPTICURRENT, LLC files this Original Complaint against Defendant POWER INTEGRATIONS, INC. alleging as follows:

## I. THE PARTIES

1. OPTICURRENT, LLC ("Plaintiff") is a Texas Limited Liability Company, with a principal place of business at 705B Mulberry Ave, Celebration, FL 34747.

2. Defendant POWER INTEGRATIONS, INC. ("Defendant") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in San Jose, CA. Defendant may be served with process by serving Sandeep Nayyar at 5245 Hellyer Avenue, San Jose, CA 95138.

## III. JURISDICTION AND VENUE

3. This is an action for infringement of a United States patent. Federal question jurisdiction is conferred to this Court over such action under 28 U.S.C. §§ 1331 and 1338(a).

4. Defendant resides in this District and has had minimum contacts with the Northern District of California, San Francisco Division such that this venue is fair and reasonable. Defendant has transacted and, at the time of the filing of this Complaint, is transacting business within the Northern District of California.

5. In addition, this suit is related to another matter pending in this district before The Honorable Edward M. Chen, styled *Opticurrent, LLC v. Power Integrations, Inc.*, 3:17-cv-03597-EMC. In that action, as in this action, the Complaint alleges infringement of U.S. Patent No. 6,958,623. Plaintiff initially filed suit against Defendant on April 1, 2016 in the Eastern District of Texas, where the case was assigned to The Honorable Rodney Gilstrap and designated Civil Action No. 2:16-cv-00325-JRG. On December 22, 2016, Defendant moved for transfer to the Northern District of California (Dkt. No. 40), and on May 26, 2017 that case was transferred

1

to the Northern District of California, San Francisco Division (Dkt. No. 68). There, it was assigned to Judge William H. Orrick and designated Civil Action No. 3:17-cv-03597-WHO. Following a Pre-trial Conference on January 22, 2019, the case was assigned to Judge Edward Chen to preside over all further proceedings including trial by jury, and designated Civil Action No. 3:17-cv-03597-EMC.

6. For the reasons set forth above, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

### III.   PATENT INFRINGEMENT

7. On October 25, 2005, United States Patent No. 6,958,623 ("the '623 Patent") was duly and legally issued for a "THREE TERMINAL NONINVERTING TRANSISTOR SWITCH." A true and correct copy of the '623 Patent is attached hereto as Exhibit "A" and made a part hereof.

8. The inventor of the '623 Patent, Mr. James Congdon, first conceived of, and reduced to practice, the invention covered by Claim 1 of the '623 Patent at least as early as February 23, 1997.

9. The '623 Patent incorporates by reference an earlier patent issued to the same inventor, namely U.S. Patent No. 5,134,323 ("the '323 Patent"). As described in the '623 Patent, the earlier '323 Patent design presented undesirable drawbacks, most notably the leakage of current between the second and third terminals of the switch when the switch is in its off switching state. Col. 4, l. 62 through Col. 5, l. 10.

10. The '623 Patent is referred to as the "Patent-in-Suit." Generally speaking, the '623 Patent relates to transistor switches used in semiconductor devices, and more specifically relates to a novel circuit design that, among other things, minimizes current leakage between the

second and third terminal of such a transistor switch. Claim 1 of the '623 Patent is directed towards a three terminal, noninverting transistor switch. As explained by the '623 Patent, noninverting transistor switches typically comprise at least four terminals: the two output terminals, the input terminal, and at least one additional terminal connected to a power supply. Col. 1, ll. 39-43. A noninverting four terminal transistor switch includes a power supply $V_{DD}$ to provide power to the internal inverter so that it can provide a high gate voltage when the input signal is low. By contrast, noninverting transistor switches which comprise only three terminals refer to a switch circuit that is capable of deriving the required power for driving the output transistor of the switch directly from its own output terminals rather than from an additional power supply. In other words, noninverting transistor switches which comprise only three terminals do not require a fourth terminal connected to a power supply for operation. Noninverting transistor switches having only three terminals provide the advantage of deriving power directly from their output terminals, thus saving cost, weight, and/or volume by reducing the number of required components and/or pins.

11. By way of assignment, Plaintiff is the owner of all right, title and interest in and to the '623 Patent, with all rights to enforce it against infringers and to collect damages for all relevant times, including the right to prosecute this action.

12. In Civil Action No. 3:17-cv-03597-EMC, Plaintiff alleged direct infringement of Claim 1 of the '623 Patent through Defendant's manufacture, use, offer for sale, sale and/or importation of systems or products including, but not limited to, the LinkZero-AX, LinkSwitch-II, TinySwitch-LT and TinySwitch-III product families. Prior to transfer of the case to the Northern District of California, Judge Gilstrap construed the claim terms and/or phrases identified by the parties from Claim 1 of the '623 Patent (Dkt. No. 58). Once the case was

transferred to the Northern District of California, the constructions set out by Judge Gilstrap were adopted and applied throughout the summary judgment stage and trial. A jury trial commenced on February 15, 2019. In its February 25, 2019 verdict, the jury found Defendant liable for direct infringement, both literally and under the Doctrine or Equivalents, of Claim 1 of the '623 Patent and awarded a reasonable royalty based on three percent (3%) of sales. On June 5, 2019 the Court issued its Order Re Post-Trial Motions, upholding the jury's finding of infringement, and granting Plaintiff's Motion for Ongoing Royalty of 3.5%. Defendant elected to drop its validity challenge on the eve of trial, and the jury was not tasked with a finding of invalidity. Because the issue of validity was not submitted to the jury, it will not be part of any appeal. Similarly, Defendant did not file an *inter partes* review against the '623 Patent, and the time for doing so has since passed.

13. Defendant, without authority, consent, right, or license, and in direct infringement of the '623 Patent, manufactures, has manufactured, makes, has made, uses, imports, has imported, markets, sells, or offers for sale systems or products that directly infringe one or more claims of the '623 Patent. By way of example only, Defendant's TinySwitch-PK, LinkSwitch-CV, and LinkZero-LP product families, and any other similarly structured or functioning products that include a three terminal non-inverting switch in accordance with the '623 Patent ("Accused Products"), directly infringe at least Claim 1 of the '623 Patent. The Accused Products also include, but are not limited to, customer specific models within the TinySwitch-PK, LinkSwitch-CV, and LinkZero-LP product families, as well as those within the LinkZero-AX, TinySwitch-LT, TinySwitch-III, and LinkSwitch-II product families, such as the SC1103 product. The above products were previously accused of infringement in Civil Action No. 3:17-cv-3597-EMC. Shortly before trial, Defendant objected to these products on the basis they were

4

not specifically identified by individual product number in Plaintiff's infringement contentions. On February 15, 2019, the Court sustained Defendant's objection and excluded these products from trial. Dkt. No. 264.

14. Plaintiff has also examined publicly available documentation to determine whether it believes several product model numbers infringe Claim 1 of the '623 Patent. Based on this review and subject to confirmation through discovery, the Accused Products further include Defendant's: 1) TinySwitch-IV product family; 2) InnoSwitch (including the InnoSwitch-CE, InnoSwitch-CH, InnoSwitch-CP, InnoSwitch-EP) product family; 3) InnoSwitch3 (including the InnoSwitch3-Pro, InnoSwitch3-MX, InnoSwitch3-CE, InnoSwitch3-CP, InnoSwitch3-EP) product family; 4) LinkSwitch-LP, LinkSwitch-3, LinkSwitch-TN2, LinkSwitch-XT2, LinkSwitch-PH, LinkSwitch-HF, LinkSwitch-TN, LinkSwitch-XT, LinkSwitch-PL product families; and 5) LYTSwitch-0, LYTSwitch-1, LYTSwitch-2, LYTSwitch-4, LYTSwitch-6 product families.

15. The Accused Products infringe the '623 Patent because, at a minimum, they include within their circuitry a three terminal non-inverting switch with a voltage stabilizer and a CMOS inverter, all of which are arranged in an infringing manner in accordance with Claim 1 of the '623 Patent. By providing the circuit in this configuration, the chip experiences, among other things, a lower amount of current leakage between the second and third terminal as described as a key advantage of the novel '623 Patent circuit design.

16. In the absence of literal infringement, the Accused Products also infringe under the Doctrine of Equivalents because to the extent there are any differences between the Accused Products and the asserted claim, such differences are insubstantial.

17. Further, Defendant induces infringement of one or more of the claims of the Patent-in-Suit by others and is therefore liable for its indirect infringement. Specifically, by way of example only, Defendant provides Accused Products to be incorporated into consumer electronic products and used within the United States. For example, Defendant states in its public literature that its transistor switches may form part of a power supply system in many consumer electronic products, such as chargers/adapters for cell phones, PDAs, digital cameras, MP3/portable audio, shavers, PC standby and other auxiliary supplies, supplies for appliances, industrial systems, and so forth. Defendant also provides Accused Products to distributors for sale and offer for sale within the United States. Defendant has had knowledge of, or was willfully blind to, the Patent-in-Suit and knowledge of, or was willfully blind, to the fact that its actions would induce infringement since at least as early as on April 1, 2016.

18. Defendant possessed a specific intent to induce infringement by, at a minimum, providing product briefs, data sheets and/or instructions on how to incorporate the Accused Products into consumer electronic products in a way that would infringe the Patent-in-Suit.

19. Alternatively, Defendant has purposefully and voluntarily placed, or caused or encouraged to be placed, infringing products into the stream of commerce with the expectation that its products will be purchased by end users in the United States.

20. The Accused Products are sold as a single integrated circuit chip. The circuitry that provides all of the patented features is within the chip. Accordingly, the Accused Products constitute the smallest saleable unit containing the patented features. The three terminal noninverting transistor switch is the essential functionality of each of the Accused Products.

21. The earlier '323 Patent technology was licensed to a company called QBar Tech Inc. Although the '623 Patent offers an improvement to the '323 Patent, the technology present in the '323 Patent is comparable to the technology present in the '623 Patent.

22. Defendant's infringement has been willful from the time Defendant became aware of its infringement, which is April 1, 2016 at the latest.

23. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284. In this case, damages should be no less than a royalty of 3.5% of the sale of the Accused Products, consistent with the Order Re Post-Trial Motions in Civil Action No. 3:17-cv-03597 (Dkt. No. 338). Based on Defendant's objective recklessness, Plaintiff is further entitled to enhanced damages under 35 U.S.C. § 284.

## IV.  JURY DEMAND

24. Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

    a. that one or more claims of the '623 Patent have been directly infringed, either literally or under the doctrine of equivalents, by Defendant;

    b. that one or more of the claims of the '623 patent have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant induced such direct infringement by others;

b. that Plaintiff be awarded all damages, in an amount no less than a royalty of 3.5% of the sale of the Accused Products, due to Defendant's infringing activities;

c. that Defendant's infringement be found to be willful from the time Defendant became aware of its infringement, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d. that Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities;

e. that the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

f. such other and further relief as the Court may deem just and proper under the circumstances.

Date: June 18, 2019.

Respectfully submitted,

/s/ Lewis Hudnell, III
Lewis Hudnell, III
Hudnell Law Group, P.C.

Of Counsel:

Jonathan T. Suder
Corby R. Vowell
Dave R. Gunter
FRIEDMAN, SUDER & COOKE

ATTORNEYS FOR PLAINTIFF
OPTICURRENT, LLC