**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

| | |
|---|---|
| OPTICURRENT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )   **NO. C 19-03563 EMC** |
| | ) |
| POWER INTEGRATIONS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

San Francisco, California
Thursday, February 20, 2020

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

        FRIEDMAN SUDER & COOKE
        604 East 4th Street - Suite 200
        Fort Worth, Texas  76102
     **BY:  JONATHAN T. SUDER, ATTORNEY AT LAW**

For Defendant:

        FISH & RICHARDSON P.C.
        500 Arguello Street - Suite 500
        Redwood City, California  94063
     **BY:  MICHAEL R. HEADLEY, ATTORNEY AT LAW**
          **NEIL A. WARREN, ATTORNEY AT LAW**
          **FRANK SCHERKENBACH, ATTORNEY AT LAW**

Reported By:       Marla F. Knox, RPR, CRR, RMR
             United States Official Court Reporter

**Thursday - February 20, 20202**                              **1:37 p.m.**

                           **P R O C E E D I N G S**

                              **---000---**

        **THE CLERK:**  Calling Civil Action 19-3563, Opticurrent, LLC versus Power Integrations, Inc.

    Counsel, please approach the podium and state your appearances for the record.

        **MR. SUDER:**  Good morning, Your Honor, John -- good afternoon, I'm sorry, Jon Suder on behalf of the Plaintiff, Opticurrent.

        **THE COURT:**  All right, Mr. Suder.

        **MR. SCHERKENBACH:**  Good afternoon, Frank Scherkenbach of Fish & Richardson for Power Integrations.  With me is Neil Warren and Michael Headley.

        **THE COURT:**  Good afternoon, Mr. Scherkenbach.

    Have we heard anything from the Federal Circuit in terms of scheduling?

        **MR. SUDER:**  I'm sorry, Your Honor.

        **THE COURT:**  Have we heard anything from the Federal Circuit?

        **MR. SUDER:**  No.  It has been fully briefed.  And -- as of the first of the year.  And we based on how long they do, we think oral argument can be as early as June -- June/July, maybe August, is when we think based on how -- from when the time briefing is done to when you typically see oral arguments.

**THE COURT:** And is there a typical time between oral argument and issuance of decisions in similar kinds of cases?

**MR. SUDER:** Yes. If they just affirm without any decision, it is called a Rule 36 -- they typically do a lot of those in the Federal Circuit -- that would be a week. Otherwise, within ninety days you get a decision. And there really -- on this one, they may take as long.

There is really only two real issues on appeal. They are appealing their 4 versus 3 claim construction, and we are appealing the damages decision that you did.

**THE COURT:** So when you do the math, it could be by September you might get a ruling?

**MR. SUDER:** Yes, yes. And there will be motions for rehearing and potentially those issues but, yes.

**THE COURT:** Right.

**MR. SCHERKENBACH:** We agree at the outside. Honestly, Your Honor, I think it could even be a bit sooner. The case -- it is a little surprising it hasn't been set already, so it could be any day.

**MR. SUDER:** I agree with that, Your Honor.

**THE COURT:** Okay. And the -- let me ask about the claim construction. There is a question about whether or not there was a -- I don't know concession, stipulation, whether it is waived. That is an issue that is --

**MR. SUDER:** Yes. That is our response to their 4

versus 3, that is a basis for the transfer; that that was -- that they would not transfer it.

MR. SCHERKENBACH:  So that's in front of the Federal Circuit, I guess.

THE COURT:  Right.  I understand both sides of that argument.  I mean, I have the quote from the transcript before Judge Gilstrap; and, I guess, there is arguably some ambiguity there.  At least you are arguing one interpretation of that, and you are arguing another interpretation.

MR. SCHERKENBACH:  Correct.

THE COURT:  How will that -- the claim construction that was rendered in which we used in Opticurrent I -- I take it your view is that there are other -- whatever comes down from the Federal Circuit with respect to the -- that claim construction, one way or another, I take it that's going to have a substantial influence or impact on this case?

MR. SUDER:  I think it is preclusive, Your Honor.

MR. SCHERKENBACH:  Well, I don't think I would use that word; but it will have a substantial impact either way. If Opticurrent is correct, that issue goes away in this case. So it is not going to be litigated further.

If we are correct, we think it is game over because all the parts accused in this case are similarly for -- parts.  So either way it's --

THE COURT:  And if the claim construction is affirmed,

what then is left on the merits on the liability side?  What is going to be the big issue?

**MR. SUDER:**  On Opti -- on the first case or on this case?

**THE COURT:**  This case.

**MR. SUDER:**  The configuration of the new products that we have accused.  If you recall, Mr. Warren told you that they were so different when Colson had the first case.

Honestly, they may change.  They may raise validity.  They may challenge for damages.  We think that it is pretty streamlined in terms of --

**THE COURT:**  In terms of infringement --

**MR. SUDER:**  It is going to be the same analysis, same expert.  We believe -- we have not gotten the data sheets on the new products, but we will do that.  And Dr. Zane will be our expert and he will look at them and can opine on them in short order, I believe.

**MR. SCHERKENBACH:**  So from our perspective, Your Honor, it will be on the infringement side.  There are two additional or new non-infringement arguments stemming from concessions made in the re-exam.  This goes to the dispute we had about whether you need to do further claim construction or not.

And obviously Opticurrent sees this differently, but in our view they made two fundamental concessions to save the

validity of Claim 1.  One pertains to the CMOS converter limitation.  The other pertains to another limitation.  So that is infringement, and then we will be challenging validity in this case as well.

THE COURT:  And those issues regarding the possible claim construction based on statements made in the re-examination are not -- would not be affected by the Federal Circuit's ruling on the claim construction that was at issue.

MR. SUDER:  I believe correct, Your Honor.  The only claim construction issue on appeal now is the 4 versus 3 preamble.  What I believe Mr. Scherkenbach is referring to is the terms "voltage stabilizer" and "CMOS" which were subject to the earlier marking that are not being challenged on appeal by either side.

MR. SCHERKENBACH:  That's true.  They are not at issue in the current appeal.  And, of course, this evidence all arose subsequent so --

THE COURT:  Okay.  I guess the question is why not allow for -- I mean, I certainly can see why this Court should not proceed with claim construction or might await a bit on claim construction although these other two issues could arise, but why not go through at least the disclosure process which would include -- and I understand it could be affected by the -- you know, depending on what the claim construction is -- but why not start the exercise of a claim chart, infringement

chart, invalidity contentions, damages contentions, advice of counsel, to get us through -- you know, and maybe some discovery which is going to have to be -- I mean, there is a fair chance it is going to have to be -- there is going to have to be some work in this case.

MR. SCHERKENBACH:  Well, not necessarily; right.  I mean, if we are right on claim construction, everything you have just said --

THE COURT:  Everything goes out the window according to your theory.

MR. SCHERKENBACH:  Right.  Right.  We have -- you know, of course, you expect me to say that.  As we mentioned in our own portion of the statement, this just happened to us for Power Integrations in another case in Delaware where we wasted -- the Court, the parties wasted several years on a completely unnecessary case and trial because claim construction got flipped on appeal and that was it.  It was over.

So, you know, the weight against that is really only a delay of maybe only six months, which is in the scheme of things not that significant.  You know, you have already made the determination that Opticurrent gets prejudgment interest. So they are going to be made whole either way.

THE COURT:  Okay.

MR. SUDER:  May I respond, Your Honor, two points.

One is we are prejudice.  If you remember Mr. Congdon who had to postpone the filing of his application so he could buy groceries.  He is not a young man.  He is not a healthy man. So six months to him of not having anything is a big deal.

That is a significant prejudice.  He shares and participates in this.  He is not a -- he is a poor man.  He is an older man.

THE COURT:  So it is delayed in getting monetary damages for somebody who is elderly.

MR. SUDER:  Yes.  And then, Your Honor, the efficiency argument, it is a little disingenuous for Mr. Scherkenbach to say efficiency when you realize all the work they made us do; all the work they made you and Judge Orrick do on validity, summary judgments, expert reports, Daubert challenges, and then drop it on the morning of trial.  And then file a re-exam and make us go through all the effort before the patent office.

So the idea that we should not have to do this work because it could be a waste of time, that's not consistent with their past conduct and what they have done to us in this case and what they did to the courts.

THE COURT:  Well, let me ask you:  I mean, is it much of a burden to go through at least the contentions process? You have done it once before.

MR. SUDER:  We are in the process of doing it now, Your Honor, because under your scheduling order, it would be

due fourteen days from today.  So we are already working on.

MR. SCHERKENBACH:  I mean, the short answer is of course we can do it.  It is not an enormous burden.  I mean, the real burden -- more than contentions -- is discovery depending on how broad Opticurrent's discovery is.

You know, we do have -- these are all new products in this case.  You may have noticed there is actually a slight dispute in the CMC about that.  They want the full number of interrogatories even though we have litigated this before.

If Your Honor wants to go forward with that, it's not the end of the world.  I can't tell you it is.  I do think their overall schedule is unrealistic.

THE COURT:  Well, I agree with that.  I am going to -- you know, the pendency is going to affect this because we can't go quite full speed.  At the same time, I'm generally hesitant to completely stand still in these things.  I'm always looking for ways to at least advance the ball somewhat.  And doing the contention process may at least get that going.

And the other thing I do want to talk to you about is ADR because once we hear from the Federal Circuit and perhaps once you issue your various contentions, that may be a good point to pause and see if this case can be resolved.

MR. SUDER:  Two points, Your Honor.  I agree with what you are saying.  I believe, in addition to the contentions -- if you remember the trial, there were data sheets and there

were revenue summaries.  That's really the thrust of the discovery that we are going to want in this case is give us the data sheets and the similar product identifications that you gave us from the first trial, and then give us the spreadsheet of revenues that you gave us which was just pressing the computer button, if you remember the testimony.

So we think that can all go forward.  I do agree with, Your Honor, that a trial setting -- a trial would have to be after the appeal because that will inform the trial.

The other two points I want to make is I agree -- we did speak to Mr. Headley.  In fairness to Michael -- to Mr. Headley, really an ADR would make sense after the Court of Appeals decides this issue.

THE COURT:  Yeah.

MR. SUDER:  I think we were in agreement.  We discussed it --

THE COURT:  That's why I intend to take a little timeout at that point.  But it may help, the ADR process, to have some of this basic information exchange, which I normally would do with or without pendency of another action.  I like to stage discovery; allow focused discovery to get reference to the magnitude of damages, key documents, not the whole, you know, train, but just the engine maybe and to allow for a meaningful ADR.

So if we set this up where we exchange the various

contentions; go through a schedule process; focus discovery. Perhaps, like you say, if it is very focused on data sheets and product ID and spreadsheets at a fairly high level, but enough so that you can ascertain the magnitude of damages, and you have exchanged damages contentions, you will be in a good position; and then you have the Federal Circuit's decision, frankly, you should be able to have a meaningful discussion at that point.

MR. SUDER:  I agree, Your Honor.

THE COURT:  Aim to get those things done by September, over the next six months.

MR. SUDER:  Six months.

THE COURT:  Whatever it is.

MR. SUDER:  That's fine with the Plaintiff, Your Honor.

MR. SCHERKENBACH:  I think it is doable as long as it ends up being of somewhat limited scope.  I'm sure we can meet and confer on that.  We would want some limited discovery from them as well depending on what they disclose in their contentions, and I would again -- I ask the Court, I mean, if you are going to -- I don't know if you are going to put just the schedule in place up to ADR; but if you are going to go beyond that, we do want to build in claim construction and all those --

THE COURT:  I think I am just going to do it up to ADR

and direct -- and your preference is private mediation or what kind of -- magistrate -- what do you --

**MR. SUDER:**  I think private mediation is better, Your Honor.

**MR. SCHERKENBACH:**  That's fine.

**MR. SUDER:**  At that point.  Your Honor, may I be heard one second on claim construction?

**THE COURT:**  Yeah.

**MR. SUDER:**  This idea that we disclaimed anything in the re-exam, I find -- I won't comment on that -- but I will tell the Court that when we tried to amend our infringement contentions before Judge Orrick, as you recall, and when we tried to add Mr. Mackillop's affidavit with regard to conception, both those times Power Integrations came in and said:  Judge, if you let this in, we have to redo claim construction.  It changes validity.  It is in the record.

And both times nothing happened.  It didn't change anything.  There was no motion even filed.  If they really believe that there is a disclaimer, then we can do that on written submissions; and you can decide whether that gives rise to a potential redoing of claim construction.

We can do that on an expedited briefing schedule.  And if the Court wants a hearing on it -- and the Court can see for itself as opposed to me telling you what is in the record -- see for yourself what Dr. Zane said and whether that is

inconsistent or gives rise.

Because if the Court believes us on that position, there is not going to be a claim construction; and we don't have to go through all of that under the local rules.

**MR. SCHERKENBACH:**  That's -- that's not entirely or necessarily true.  First of all, we are happy for you to take a look at it.  You have to take a look at it because you are going to need to do it for claim construction.  We think it is absolutely claim textbook disclaimer.  It is going to end the case actually in our view.

**THE COURT:**  Well, Counsel suggested that I sort of bifurcate this and look at that issue first and the predicate -- the precursor to the claim construction; but, frankly -- well, I'm not going to rule on this now because we --

**MR. SUDER:**  Sure.

**MR. SCHERKENBACH:**  Right.

**THE COURT:**  We don't know what is going to happen.  It is premature.  I will say that I'm generally adverse to bifurcation whether it is bifurcating discovery for class action purposes; bifurcating discovery for liability versus damages; bifurcating trials.

I have done that enough times to be at the other end of that saying I wish I wouldn't have bifurcated.  So it is just one more motion -- I understand the argument that this could

pre-empt the whole necessity.  I'm not going to rule on that now.  We will talk about that when we get there.

What I want to do is go ahead and set the schedule.  I think what I would like you to do is to meet and confer and come up with a revised schedule that includes the various disclosures up through disclosure of advice of counsel, which is your number 9, and a timeframe for -- and I would say, you know, to have ADR completed by, let's say, the end of October at the outside because by then -- certainly by then we should have something from the Federal Circuit.  You would have been able to get some of this discovery done and, you know, it gives us some timeframe and then have that done by October and then -- but we would meet before then because at that point I will want to set discovery close -- you know, discovery in earnest and summary judgment and trial.  Obviously by that point it will be some time 2021, hopefully early part of 2021.

**MR. SUDER:**  Thank you.  My only question for the Court is given Mr. Congdon's situation, would the Court take into account -- if we are here in October and you set us a trial date -- that it would be on a more expedited fashion than if the case were just being set at that time?

**THE COURT:**  Yeah.  That would be my intent to see if we can get you in in early 2021, which is fine because that makes -- that puts it on the typical -- actually slightly expedited.  Sometimes these cases take two years to get to

trial.

**MR. SCHERKENBACH:**  I would just say if we are going to do claim construction first beginning after October, that strikes me as pretty aggressive for a trial date.

**THE COURT:**  It might be.  It might be spring or something, you know.  But I -- I just want to give you a general timeframe.  But I -- as we approach that date, we will probably compress because it is not going to be that complicated -- we have been through this process already -- to go through claim construction and maybe we will double up dispositive motions and collapse that or something.  I don't know.

**MR. SCHERKENBACH:**  Your Honor, one other thing, sorry. In terms of the schedule, Mr. Headley reminds me correctly, advice of counsel would depend potentially on the claim construction.

**THE COURT:**  Oh --

**MR. SCHERKENBACH:**  And how that would apply in the case.  Can we go up through number 8 for now -- schedule up through number 8 and 9 would trail?

**THE COURT:**  Okay.  I don't have any major problem with that.

**MR. SUDER:**  Well, Your Honor, the advice of counsel now has been set because the case has been -- the lawsuit has been filed and the allegations have been made.  So nothing

about claim construction now impacts them telling us what they have done up until now.

**THE COURT:**  You can always amend too for cause.

**MR. SCHERKENBACH:**  We can amend.  That's true.  As long as it is understood that we can amend for that reason, the advice of counsel disclosure.

**THE COURT:**  Yeah, if there is cause, if there is some new -- I think you have the right to do that.  So let's keep it in there; go through 9 with an eye towards getting that -- you might want to have a little more time.  You can spread this out a little bit, and then with an eye towards completion of ADR by end of October.

**MR. SUDER:**  Yes, sir.

**MR. SCHERKENBACH:**  That's doable.

**THE COURT:**  And let's set a further status conference just to see how you are doing maybe in August.

**THE CLERK:**  August 13th, Your Honor.

**THE COURT:**  Okay.  How is August 13?

**MR. SUDER:**  That works, Your Honor.

**MR. SCHERKENBACH:**  One moment, Your Honor please.

(Pause in the proceedings.)

**MR. SUDER:**  Obviously if there is a decision beforehand, we will immediately --

**THE COURT:**  If it is beforehand, we can move that up; and that could change everything obviously.

**MR. SUDER:**  Yes.

**MR. SCHERKENBACH:**  August 13th is fine.

**THE COURT:**  Yeah.  So if the decision comes out; if they do issue the one line affirmance within seven days, and you get your argument done and here we are in June -- they have already decided -- let's schedule an earlier status conference. Just notify the Court that something has developed, and we can re-examine this timeframe.  Okay?

**MR. SCHERKENBACH:**  Understood.

**MR. SUDER:**  Thank you, Your Honor.

**THE COURT:**  Thank you.

(Proceedings adjourned at 1:56 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

We certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Monday, March 16, 2020

_____

Marla F. Knox, RPR, CRR, RMR
United States Court Reporter